7bm439
110 248

## Booker, &c. *vs* Gregory.

Error to the Washington Circuit.

*Usury. Practice in Chancery.*

Judge Breck delivered the opinion of the Court.

CHANCERY.

*Case* 114.

*July* 22.

On the 20th July, 1841, Gregory executed a mortgage to Booker, Litsey &c., to secure the payment of about $2,500 to Booker, and of $1,173 58 to Litsey, and of a large amount due the other mortgagees.

In 1842, the mortgagees filed their bill for a foreclosure.

In July, 1843, Gregory filed his answer, making it a cross bill against all the mortgagees, alledging that the claims secured by the mortgage included a large amount of usury. That the claim of Litsey was all usury, and that he had paid him a large sum besides, for which he sought a decree.

Booker admits that the loans to Gregory had been at the rate of ten per cent. per annum; but contends that a credit claimed by Gregory for $300 as paid in 1839, was in fact paid in March, 1838, and that it was paid in discharge of a note for $303, executed to him exclusively for usury, which then had accrued upon previous loans. This sum, he alledges, was paid as usury, and more than five years before the exhibition of Gregory's cross bill; and in bar of his right to recover it or to apply it as a credit, he relies upon the statute of limitations.

Litsey admits the usury charged by Gregory in part, and denies in part.

The Court below reduced the claim of Booker to $1,247 50, for which a foreclosure was decreed. And as to Litsey, he refused him any relief, and rendered a decree against him in favor of Gregory for $485 42.

To reverse that decree, Booker and Litsey prosecute severally writs of error, and Gregory assigns cross errors.

The case of Booker will first be considered. The main and important question involved in that case, is

*[margin notes: The object of the bill. Gregory's answer and cross bill. Booker's answer to Gregory's cross bill. Litsey's answer. Decree of the Circuit Court.]*

BOOKER, &c.
vs
GREGORY.

Where there was
a settlement be-
tween the lender
and borrower &
a balance struck
and a separate
note taken for
usury, and paid
off in a few days.
Held that the re-
ceiver could not
rely upon limi-
tation to bar its
recovery or ap-
propriation to
the reduction of
the note for the
principal while
any part of it re-
mained due.—
Crutcher vs Tra-
bue, (5 Dana,
80.)

whether Booker can render available the statute of limi-
tations as to the $303, alledged to have been paid as
usury more than five years before Gregory exhibited his
cross bill.

The circumstances under which that payment was
made, are stated by Booker in his answer as follows:
That in March, 1838, he and Gregory came to a settle-
ment of the money transactions between them, and it
was ascertained that the entire amount of usury upon the
two sums, one of $1,200 loaned in 1833, and a. subse-
quent loan of $300, was $303, for which he took Grego-
ry's note payable in eighteen days, and which was paid
at maturity; and for the amount of principal loaned and
six per cent. up to that time, being $2,000, he took Gre-
gory's note payable in twelve months, including ten per
cent., for $2,200.

According to the case of *Hodge* vs *Owens*, (5 *Monroe*,
92,) it is insisted the statute applies and is an effectual
bar to the recovery of the amount, or the right to apply it
as a credit.

The principal difference between that case and this, is
that the borrower in the former case, applied to a Court
of equity for relief, and in the latter the lender first comes
into equity. But to what extent that fact would vary or
affect the rights of the parties, we need not stop to en-
quire, as we are disposed to regard the case of *Crutcher*
vs *Trabue*, (5 *Dana*, 80,) as virtually overruling the case
of *Hodge* vs *Owens*. It is true in the case of *Crutcher* vs
*Trabue*, the statute was not expressly relied upon by
Trabue, who had exacted the usury. But the principle
is recognized in that case, that the borrower cannot re-
cover back usury, either at law or in equity, until he has
paid the principal. Upon this principle the lender could
not rely upon the statute, or it would not commence run-
ning till the borrower was entitled to demand and recover
the usury. It seems to us this is the true equitable ground
upon which it should be placed. Had Gregory paid the
$303 at the time the note for $2,200 was given, the note
would have been for that much more, and the interest
thereon, than he owed. It was for that much more than
Booker in conscience had a right to claim. It was op-

pressive to take both notes, even if the large one had only been for the amount of principal and legal interest. If the $303 was actually paid, or if the note for it was designed to be paid, or as payment, then it was unjust to require the large one for the amount for which it was given. The payment of the $303 was a part of the *res gesta*. It was paid on account of the lending and borrowing. The mere fact of calling it the usury which had then accrued, did not have the effect to separate the transaction or to dissolve the connection and relation which it bore to it. The giving the small note was as much a part of the transaction as giving the large one. Taking, therefore, the two notes as equally constituting parts of the transaction, it would of course follow, that in the aggregate, they were for more than was due Booker. Neither note was a payment, but each was *prima facie.* evidence of debt to the amount due by the obligor. If the small note was paid, it followed, of course, that it would be unconscientious in Booker to require payment of the whole amount of the large one. It was not all due him and a Chancellor should lend him no aid in its collection.

This Court in effect decide, in *Estill* vs *Rodes, &c.*, (1 *B. Monroe*, 314,) that usury actually paid, is a deposit in the hands of the lender, subject to be reclaimed by the borrower, and in *Wood* vs *Gray's executors*, (5 *B. Monroe*, 92,) it is decided that until the election is made by the borrower to reclaim, he is not entitled to interest. Upon the principal thus settled in regard to interest, it is urged that Gregory, in this case, was not entitled to apply the $303 as a payment, until he elected to do so, and consequently, that it should only be so applied at the time the election was made. But we think it was optional with Gregory to treat it as a payment, when made, of so much of what he owed Booker; as a return of that much of the money borrowed. The effort by the lender, to separate the *chaff* from the *wheat* is merely ideal. The true question for the Chancellor to decide is, how much of the loan and legal interest has been reimbursed, and how much remains unpaid; and if more than the principal and interest has been paid, when was the excess paid? That the borrower was not bound to

pay, and he has a right to reclaim it as soon as paid, and from that time, and not till then, the statute would commence running.

In a word, the doctrine we consider as settled, that all sums paid by the borrower to the lender, although at the time of payment denominated usury, will be treated as payments of the principal and legal interest, at the election of the borrower; and that payments thus made, are not, for any purpose, to be considered as usury, while the principal and legal interest remain unpaid. The election of the borrower entitles him to a credit at the time the payment was made. This right is reciprocal. The lender may so treat it by actually crediting the borrower for so much of what he is justly owing him. It results, therefore, that the $303 paid by Gregory to Booker, cannot, for any available purpose, be treated otherwise than as a payment of that much of what the former justly owed the latter. Neither could render it available as a payment of usury. The position contended for, therefore, in regard to the time when the $303 should be applied as a payment, cannot be sustained. It was properly applied at the time, when in point of fact it was paid. These principles were expressly recognized by this Court, in *Wood* vs *Gray's executors*, *supra*, and are considered as the correct and settled doctrine; and we deem it unnecessary, therefore, more particularly to notice the arguments and authorities relied on by counsel to overturn it

No error is perceived in the record to the prejudice of Booker. Nor are we satisfied that the decree ought to be disturbed upon the cross errors.

The objection that Gregory was entitled to an additional or larger credit, is not deemed available. Nor did the Court below, in our opinion, err in permitting the interest upon the sums actually loaned by Booker to be annually compounded. When the interlocutory decree was rendered, Gregory came into Court and consented that the interest should be computed in that way. Subsequently, upon the coming in of the Commissioner's report, he sought to repudiate the consent thus given. The Court overruled the exception to the report in that behalf,

All payments made for usury may, at the option of the payor, be regarded as payments of so much of the principal and interest at the time when made, until the principal and interest is fully paid off. *Wood* vs *Gray's Ex'r.* (5 B. Monroe, 92.)

When a party, defendant on the rendering a decree of foreclosure of a mortgage consented that interest should be compounded, the Court should not permit him to repudiate his agreement of record.

and we think correctly. First, because it was trifling with the Court, after having agreed to the mode of computing the interest, to attempt to avoid it solely upon the ground that the Commissioner had not allowed him as large a credit as he had claimed.

But, secondly, the Court was right in overruling the exception, apart from the consent. There was a virtual renewal of the loan by the parties annually. Separate notes appear to have been annually given for the interest, legal as well as usurious. From Gregory's own showing, the debt or loan was annually renewed; and consequently, according to *Rodes* vs *Blythe*, (2 *B. Monroe*, 335,) and other cases, Booker was entitled to his principal and legal interest by that mode of computation.

As between Booker and Gregory, the decree, therefore, is right, and is affirmed upon both the original and cross errors.

*Morehead & Reed and Shuck* for plaintiffs; *McHenry and Harlan & Craddock* for defendant.

