## Stacy's Adm'r et al. v. Stacy et al.

Feb. 11, 1944.

620

Ben. H. Scott, Clarence Miller, M. C. Redwine and Edward C. O'Rear for appellants.

John W. Walker for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Affirming in part and reversing in part.

Mrs. Elizabeth Stacy died on July 19, 1938, at the great age of 100 years. Her son, Hugh, had made his home with his mother on her 345 acre farm. He died in February 1931 and his sister, the appellant Mrs. Amanda Gresham, came from her daughter's home in Indiana to his funeral. After Hugh's burial Mrs. Gresham remained in the home to care for her mother, who was then 93 years of age. On June 30, 1931, Mrs. Stacy fell and broke her hip and from then until her death she was bedridden. Some two years before her death a cancer developed on her nose and her right arm became paralyzed. The old lady was stone deaf and the only way to communicate with her was to write on a slate which she kept on her bed for that purpose.

It is hardly disputed that Mrs. Gresham was a kind, dutiful daughter who constantly, both day and night, waited on her mother from the time she broke her hip until her death in 1938. She not only nursed, cared for and fed her mother, but performed the extraordinary and menial services of lifting her on the slop-jar, bathing her often, changing her bed frequently to keep it sanitary and rendered every character of service required by a very old bedridden woman afflicted with a broken hip, cancer and paralysis. It is for these menial services that Mrs. Gresham is making claim and not for the usual and ordinary services of attending to her mother's business, doing the cooking, the housework and largely looking after the farm. She was assisted by two different old men who performed the farm work and outside chores, and two women who were hired to do the family washing during the years of Mrs. Stacy's illness, and at times by a girl who helped with the housework.

On July 9, 1938, Mrs. Stacy executed her will leaving her entire estate to Mrs. Gresham, reciting therein her reason for so doing was because of the faithful nursing and attention she had received from her daughter. The will further recited that testatrix had theretofore conveyed the home place to Mrs. Gresham "for her untiring work in taking care of me." The deed referred to was executed on July 21, 1937, and recites the consideration of one dollar and "deep love and affection which the party of the first part has for the party of the second part and her untiring care of the party of the first part during her many years of illness and helplessness."

An action was instituted by the heirs of Mrs. Stacy attacking the will which resulted in a judgment holding that paper was not the last will of testatrix but that an instrument of date, May 13, 1924, was her will wherein she devised practically all of her property equally among her four children. There was no appeal from that judgment.

There was another action filed by the heirs attacking the deed on the ground of want of mental capacity and undue influence. The chancellor cancelled the deed and his judgment was affirmed in Gresham v. Stacy, 287 Ky. 321, 152 S. W. (2d) 960, 962, not because undue influence or lack of mental capacity was established, but because the defendant and grantee, Mrs. Gresham, failed by her proof to show the fairness of the transaction and the ability of her mother to fully comprehend the deed in all of its implications at the time she executed it, which burden the law places upon the grantee of a deed where the grantor is infirm or disabled and is under the dominion of the grantee. The opinion recites: "Appellant (Mrs. Gresham) is not precluded from recovering from the estate any compensation to which she may show herself entitled."

Mrs. Gresham was administratrix with the will annexed of her mother's estate and on July 10, 1941, brought this action to settle the estate and to personally recover $13,650 for services rendered her mother. Her petition as amended did not aver an express contract but alleged facts from which a contract is implied in law to pay for the services received, in that her mother's condition required extraordinary care and attention for a period of seven and a half years and that she rendered arduous and menial services to her mother during that

time and is entitled to a reasonable compensation therefor, which her pleadings aver is $35 per week. She also asked a reference to the master commissioner to hear proof of claims, and a proper allowance to her attorneys for services rendered in settling the estate.

The answer was a traverse followed by an averment that appellant knew her mother's condition and went to live with her for the mutual convenience of the parties. Also, it pleaded the five year statute of limitations. By way of counterclaim it was averred that appellant had complete dominion over her mother and managed her affairs and she should be made to account for $2,532.59 in oil royalties collected for her mother during her illness; for $400 for timber cut and sold from the farm; as well as $3,000 for the use of the farm for ten years, which it is alleged had a rental value of $300 per annum.

Upon a hearing the chancellor adjudged appellant should recover $3 per day from July 10, 1936, to her mother's death on July 19, 1938, or $2,217 for extraordinary and menial services rendered her mother. The evidence amply supports the judgment of the chancellor that the fair market value of the services rendered was $3 per day. In addition the judgment allowed her $20 per month for board furnished her mother during that time, or $486, making her total recovery $2,703. He offset against this sum $972.75 representing the rental value of the farm for six years at $300 per year (no plea of limitations having been interposed by appellant) less appellant's one-fourth interest therein after crediting her with three-fourths of the $583.13 taxes she paid; and he made the further offset of $1,242.88 representing three-fourths of the oil runs received from July 10, 1938, to and including 1939, which reduced her recovery to $547.37. The chancellor refused to grant the prayer of a pleading filed by Mrs. Mary Bayne Stacy Nehrboss, a grand-daughter, to set aside to her and not sell her 1/48 royalty and he ordered the farm and the entire 1/8 royalty sold for distribution among the four heirs. The chancellor further refused to allow either party an attorney fee to be taxed against the estate and ordered each of the four parties to pay one-fourth of the court cost.

Mrs. Gresham appealed and the heirs filed a cross-appeal. Mrs. Nehrboss cross-appealed from so much

of the judgment as refused to set aside to her 1/48 royalty interest. Hon. John W. Walker, attorney for the heirs, moved this court for an appeal from that part of the judgment which refused to allow him an attorney fee of $450 for representing, as he claims, the estate. Also, a motion was made to strike the supplemental record bringing up a copy of the will.

Nine briefs, some rather voluminous, were filed in which many questions are raised and discussed at length. If we attempted to answer all arguments contained in these numerous briefs, this opinion, which of necessity must be long, would be unduly extended without any material benefit resulting to the profession. Therefore, we will limit our discussion as much as possible and confine it to what we regard as the important points raised, which are: 1. Was the proof sufficiently clear to allow a recovery by the daughter for extraordinary and menial services rendered over a long period of years to her mother in the absence of an express contract? 2. Were the will and the deed competent evidence to show an intention upon the part of the mother to pay for such services? 3. Were the judgments rejecting the will and setting aside the deed res judicata in this action to recover for services? 4. Did the deed amount to a promise to pay for all services rendered up to its date, July 21, 1937, so as to prevent the five year statute of limitations from barring that part of appellant's claim for services rendered more than five years before this action was brought on July 10, 1941? 5. Did the court err in refusing to allow either party an attorney's fee to be taxed against the estate? 6. Was it prejudicial error to refuse to set apart to Mrs. Nehrboss her 1/48 oil royalty interest? 7. Should the chancellor have charged Mrs. Gresham with the oil royalties and with the rental value of the farm while she was caring for her mother with the proceeds thereof?

It is now the well-established rule in this jurisdiction that a close relative may recover for extraordinary and menial services rendered a kinsman over a long period of years in the absence of an express contract where the proof is sufficiently clear and certain to overcome the presumption that the parties were living together for mutual benefit and to show that the claimant expected to be compensated and the recipient of the services expected to pay therefor. Humble v. Humble,

152 Ky. 160, 153 S. W. 249; Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. (2d) 459; Powell's Adm'r v. Powell, 261 Ky. 705, 88 S. W. (2d) 694; Allen v. Smith, 208 Ky. 207, 270 S. W. 782. As was said in the Kellum case, the degree of proof required should diminish as the natural duties are lessened.

While Green's Adm'r v. Smith, 234 Ky. 448, 28 S. W. (2d) 494, holds there can be no recovery on an implied contract for services between close relatives, it is apparent that opinion had reference to ordinary services and not to those of an extraordinary character and of a menial nature.

In the instant case Mrs. Jolly and Walter Gresham, both children of appellant, testified their grandmother said to them that their mother would be paid for her services. Although the will and the deed, which were both set aside, are not competent evidence that the title to the farm passed to Mrs. Gresham, they are competent to show that Mrs. Stacy intended to pay her daughter for the services, since each instrument recites that the reason it was executed in favor of the daughter was in consideration of extraordinary services she rendered her mother. Thomas v. Arthur, 70 Ky. 245; Mussinon's Adm'r v. Herrin, 252 Ky. 495, 67 S. W. (2d) 710; Strong v. Whicker, 274 Ky. 10, 117 S. W. (2d) 1017. It might not be amiss to remark here that the opinion in Gresham v. Stacy, 287 Ky. 321, 152 S. W. (2d) 960, 961, in upholding the judgment of the chancellor cancelling the deed said: "No direct instance of undue influence was shown, and the testimony indicating lack of mental capacity was of little probative value." The record shows that Mrs. Gresham not only expected to be remunerated for her services but that she was rather militant on the subject. We have reached the conclusion that the evidence is clear and convincing that Mrs. Stacy expected to pay and Mrs. Gresham expected to receive compensation for the services rendered. It follows from what has just been said that we must overrule appellees' motion to strike the supplemental record which contained the will.

It is evident the judgments in the will contest and in the action to set aside the deed are not res judicata in the present action wherein recovery is sought on an implied contract for extraordinary services, because the subject matter of the latter action is entirely different

from that involved in the two former ones. Triplett v. Bays, 285 Ky. 822, 149 S. W. (2d) 723; Love's Ex'r v. Stoker, 278 Ky. 555, 128 S. W. (2d) 922; Combs v. Prestonsburg Water Co., 260 Ky. 169, 84 S. W. (2d) 15.

We cannot agree with appellant's argument that the deed constituted a promise on the part of Mrs. Stacy to pay for the entire period she rendered the service, and as this action was instituted within five years from the date of the deed no part of the claim is barred by the statute of limitations. The judgment setting aside the deed was affirmed in Gresham v. Stacy, 287 Ky. 321, 152 S. W. (2d) 960, hence the deed cannot be regarded as binding between the parties; as above stated, we permit its introduction in this case solely as evidencing Mrs. Stacy's intention to pay her daughter. Even if the deed could be considered a new promise, which it cannot, the appellant in the present action would have had to base her suit on the new promise in order to lift the barred portion of her claim over the statute of limitations to recover the full amount, and this she did not do. Thornton's Adm'r v. Minton's Ex'r, 250 Ky. 805, 64 S. W. (2d) 158.

Appellant argues that as Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S. W. (2d) 459, 468, says in claims of this character each year's services constitute a separate cause of action and that KS 2515 (now KRS 413.120) constitutes a bar to any suit not brought within five years from the end of any annual period, she should be permitted to recover for the entire year of 1936, and the chancellor should not have stopped her recovery on July 10, 1936, which was five years before her suit was instituted. With this we cannot agree and we think the chancellor correctly limited her recovery to five years next before this action was brought on July 10, 1941. What was said on the subject of limitations in the Kellum case was predicated upon what was written in Bryson's Adm'r v. Biggs, 104 S. W. 982, 32 K. L. R. 159. While the language in those two opinions may be somewhat ambiguous, we do not construe it as meaning, in the absence of a statute, contract or custom, that no suit can be instituted for such services until the expiration of the calendar year in which the services were rendered; nor do we construe the language as extending the statute of limitations beyond five years. In the absence of a statute, contract or custom fixing the time

when the claim for services is due, we are of the opinion that the recovery is limited to a period of five years next before the suit is brought. Stidham v. O'Neal's Adm'r, 245 Ky. 667, 54 S. W. (2d) 54, appears to have misconstrued the meaning of what was written in Kellum v. Browning's Adm'r, and in so far as it is in conflict with this opinion the Stidham case is overruled.

But the chancellor erred in adjudging that appellant recover $20 per month for the board of Mrs. Stacy during the time he allowed her to recover for extraordinary services, since board cannot be recovered on an implied contract where the parties are living together as a family. Kreuzman's Adm'r v. Neineber, 253 Ky. 241, 69 S. W. (2d) 367. Besides, the expense of the household was met by Mrs. Stacy's receipts from the oil royalty and the produce raised on her farm and such expense was not borne by her daughter.

The chancellor further erred in requiring Mrs. Gresham to account for three-fourths of the oil royalty from July 10, 1936, until the royalty was withheld by the pipeline in 1939. He should have adjudged that she only account for three-fourths of this royalty received after her mother's death on July 19, 1938, until it was withheld by the pipeline in 1939, since the evidence shows this royalty was used to maintain Mrs. Stacy and her home until her death.

As the farm was occupied by Mrs. Stacy and the proceeds therefrom were used for her support, the chancellor likewise erred in charging Mrs. Gresham with three-fourths of its alleged rental value of $300 per year from 1936 to 1942, inclusive. After the death of her mother, Mrs. Gresham remained on the farm and claimed it under the deed until this court on June 20, 1941, affirmed the judgment of the chancellor cancelling the deed; so she should only be charged with the rental value of the farm from her mother's death, July 19, 1938, to June 20, 1941, which practically would be for the three years 1939, 1940 and 1941. Appellees' witnesses testified the rental value of the farm was $300 per annum, yet when the master commissioner advertised it for rent in the spring of 1942 he did not receive a bid. It was in April when he advertised the farm for rent which is quite late to start preparation for crops. We do not think the rental value is $300 per annum, nor do we believe that the farm had no rental

value. It strikes us that the fair rental value of the farm, a great portion of which was in timber, was $100 per year, therefore Mrs. Gresham should have been charged with three-fourths of $300 for the three years she occupied the farm under color of the deed after her mother's death. It was correctly adjudged that Mrs. Gresham should recover three-fourths of the $583.13 taxes paid by her on this property.

The chancellor did not err in refusing to allow attorneys' fees to either party to be taxed as cost for services rendered in settling the estate. Practically no services were rendered the estate by the attorneys on either side and their efforts were entirely directed in behalf of their respective clients, hence they, and not the estate, must pay the attorneys they employed. Trevathan's Ex'r v. Dees' Ex'x, 221 Ky. 396, 298 S. W. 975, 982; Lay v. Lay, 201 Ky. 93, 255 S. W. 1054. The motion of Hon. John W. Walker, attorney for appellees, for an appeal is therefore denied.

Nor was it error to refuse to set aside to Mrs. Nehrboss her 1/48 royalty interest. The record shows the entire royalty when production was at its best was something like $50 per month, which would make Mrs. Nehrboss' interest therein a little over $1 per month. For practical purposes this is too small to set aside to her and it would perhaps impair the sale of the remainder of the royalty interest. The judgment is affirmed on her cross-appeal.

In reaching our decision we have not considered any of the incompetent evidence to which exceptions were filed, therefore it is not necessary for us to pass upon the chancellor's ruling on the evidence to which exceptions were taken. Nor is it necessary for us to determine whether the chancellor erred in striking the deposition of Park Tipton from the record, on the ground that it was taken on insufficient notice, because there was ample proof to support appellant's claim for services without considering the deposition of this son.

To summarize: The judgment is affirmed in part and reversed in part on the appeal of Mrs. Gresham as well as on the cross-appeal of the heirs. It is affirmed on the cross-appeal of Mrs. Nehrboss. The motion of Hon. John W. Walker for an appeal is denied. A judgment will be entered in conformity with this opinion.